**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Dayton Heidelberg Distributing Co.,**

       *Plaintiff,*

v.                                               Case No. 3:18-cv-294
                                                   Judge Thomas M. Rose

**Local Union No. 957, International**
**Brotherhood of Teamsters,**

       *Defendant.*

---

**ENTRY AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DOC 14, AND GRANTING IN PART DEFENDANT'S COUNTERCLAIM FOR SUMMARY JUDGMENT, DOC 17. THE ARBITRATION AWARD IN FAVOR OF THE UNION IS ENFORCED BUT DEFENDANT'S MOTION FOR ATTORNEY'S FEES IS DENIED. DEFENDANT IS GRANTED UNTIL AUGUST 2, 2019 TO SUBMIT A DRAFT JUDGMENT ENTRY IN CONFORMITY WITH THIS ORDER AND ENTRY TERMINATING THE CASE.**

---

Before the Court is a Motion for Summary filed by Plaintiff Dayton Heidelberg Distributing Co. (Doc 14), and a Motion for Summary Judgment filed by Defendant Local Union No. 957, International Brotherhood of Teamsters. (Doc 17). Plaintiff seeks summary judgment to vacate an arbitration award granted to the Defendant. Defendant seeks summary judgment to enforce the arbitration award and further claims they are entitled to attorney's fees under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The parties are largely in agreement regarding the facts. Because Plaintiff's case fails to meet the Sixth Circuit standards

to vacate an arbitration award set forth in *Michigan Family Resources, Inc. v. SEIU Local 517M*, 475 F.3d 746 (6th Cir. 2007), the Plaintiff's Motion for Summary Judgment to vacate the arbitration award is denied and the Defendant's motion will be granted in part.

**I.     Background**

Plaintiff Dayton Heidelberg Distributing Co., hereinafter referred to as "Heidelberg" or "the Company", operates seven wholesale beverage distribution facilities in Ohio and employs approximately 1,500 employees. (Doc. 14, PageID 511). Defendant, Local Union No. 957, hereinafter referred to as "the Union" or "Local No. 957", is a labor organization as defined under 29 U.S.C. § 152(5) affiliated with the International Brotherhood of Teamsters, which represents certain Heidelberg employees as their exclusive collective bargaining representative. (Doc. 6, PageID 167). In 2015, Heidelberg began negotiations with several local unions, including Local No. 957, on a new collective bargaining agreement. (Doc. 1, PageID 3). The final CBA, which became effective on June 21, 2015 and expired on March 2, 2019, included provisions governing healthcare benefits and grievance arbitration procedures. (*Id.* at PageID 2-4).

Article XVII of the 2015 CBA, entitled "HEALTH AND WELFARE" memorialized the agreement between Heidelberg and the Union regarding the healthcare plans and benefits provided to Union-member employees. (Doc 13-1, PageID 292-93). Article XVII, Section 2 stipulated that Heidelberg will provide insurance for employees and their dependents, that employees will not be responsible for "any premium cost sharing amounts," with the caveat that Heidelberg, "reserves the unilateral right to modify or discontinue any and all such benefits, provided the Employer does so in the same manner as affects the non-represented employees,"

without a duty to bargain with the Union regarding those decisions. (*Id.* at PageID 293). Article VI of the 2015 CBA dictated the grievance procedures agreed upon by Heidelberg and the Union. (*Id.* at PageID 277). If a grievance was reported and could not be resolved through internal measures, the issue was to be referred to an arbitrator. *Id.* Under Article VI(e), the arbitrator had the authority to make a "final and binding decision" on the issue, provided the arbitrator's award did not "add to or modify the terms of this Agreement." (*Id.* at PageID 278).

On August 11, 2017, Heidelberg sent a letter to their employees informing them that beginning on September 1, 2017 the company would be assessing a spousal surcharge for any employee whose spouse chose to be covered through the Heidelberg insurance plan despite access to healthcare through their own employer. (Doc. 13-3, PageID 341). The Union filed a grievance in response claiming that the imposition of a working spouse surcharge violated Article XVII of the 2015 CBA, among other provisions. (Doc. 13-2). Ultimately the grievance was referred to Arbitrator Donald Cohen, in accordance with Article VI of the 2015 CBA. (Doc 1, PageID 6).

After hearing testimony and reviewing evidence provided by both the Union and Heidelberg, Arbitrator Cohen issued a decision and award on May 31, 2018, hereinafter referred to as "the Award." (*Id.*; Doc 6, PageID 168). The issue, as articulated by Arbitrator Cohen in his award was, "Did the Company violate the 2015-19 collective-bargaining agreement when it implemented a spousal surcharge on September 1, 2017? If so, what is the appropriate remedy?" (Doc 13-13, PageID 502). Arbitrator Cohen's award sustained the Union's grievance, concluding that spouses are beneficiaries of the contract and the spousal surcharge is a premium cost sharing amount for which employees cannot be responsible under Article XVII of the 2015 CBA; thus,

Heidelberg violated the 2015 CBA. (Doc 13-13, PageID 506-507). In reaching this conclusion, Arbitrator Cohen relied on the language of the 2015 CBA as well as Heidelberg's past practices by reviewing the 2011 CBA and the company's practice under the 2015 CBA prior to the implementation of the spousal surcharge. (*Id.* at PageID 505-506). Finally, the Award requires Heidelberg cease the assessment of the spousal surcharge and reimburse any payments made "for spousal coverage from the date of the institution of such charges." (*Id.* at PageID 507).

Following the issuance of the Award, on February 1, 2019, Heidelberg filed the Complaint now before this Court. Later that day, the Union filed its Counterclaim, which is also now before this Court.

## II. Standard

### A. Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs the standard for summary judgment, stating that summary judgment is proper when the moving party "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Genuine issues of material fact exist when the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Finally, in motions for summary judgment, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008). Summary judgment is

denied when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Consequently, summary judgment is necessary "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Review of Arbitration Awards

Federal courts view arbitration awards with an extremely deferential gaze. Judicial review of arbitration awards is limited to ensuring that the collective bargaining agreement commits the dispute to arbitration, that the decision was not procured through fraud or dishonesty, and that the award did not simply reflect the arbitrator's own notions of "industrial justice." *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (citing *United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)), *en banc, cert. denied*, 551 U.S. 1132 (2007). In situations where an agreement submits a dispute to arbitration, any questions of contract interpretation are for the arbitrator, not the courts. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). As interpretation is left to the arbitrator, the courts are not to consider the merits of a grievance, which includes the validity of the claim or analysis of whether there is language in the agreement to support the claim. *Id.*

The Sixth Circuit has established a three part test for courts to use when reviewing arbitration awards. *Mich. Family* at 753. First, the court must examine whether the arbitrator acted "outside his authority" by "resolving a dispute not committed to arbitration." *Id.* Second,

the court must determine if the arbitrator committed fraud, acted dishonestly, or had a conflict of interest that would influence the issuance of the award. *Id.* Third, the court must establish that the arbitrator's resolution of legal or factual disputes constituted "arguably construing or applying the contract." *Id.* If the award does not offend these three requirements, the judiciary should not intervene by vacating the award. *Id.*

To determine the scope of an arbitrator's authority, the courts must turn to the collective bargaining agreement. *American Mfg. Co.* at 568. An arbitrator does not exceed their authority simply by making an interpretive error; they exceed their "authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Mich. Family* at 756. Doubts regarding the inclusion of a particular dispute within the scope of the CBA "should be resolved in favor of coverage" rather than exclusion. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960). The Supreme Court and Sixth Circuit grounded the presumption in favor of coverage in the idea that the parties bargained for the judgment of an arbitrator, not the courts, when they chose to include an arbitration agreement in their collective bargaining agreement. *American Mfg. Co.* at 568.

To establish that the arbitrator was "arguably construing or applying the contract," the arbitrator must appear to be engaged in interpretation. *Mich. Family* at 753. However, the arbitrator must not "dispense his own brand of industrial justice;" therefore, the interpretation is only valid "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Courts can find that an arbitrator dispensed his own brand of "industrial justice" when the award is "so untethered to" the language of the agreement "that it would cast doubt upon whether the

arbitrator was indeed engaged in interpretation." *Mich. Family* at 753. At that point, the courts can consider the merits of the case; however, such situations are rare. *Id.* In most cases, "improvident, even silly fact-finding" which leads to a "serious error" of interpretation "does not suffice to overturn" an arbitrator's decision. *Misco* at 38-39. Instead, an arbitrator appearing to engage in interpretation will suffice to enforce an award, "and if there is doubt we will presume that the arbitrator was doing just that." *Mich. Family* at 753.

## III. Analysis

The material facts are not in dispute in this case. Both parties stipulate to the record of arbitration proceedings, including the 2015 CBA, the Award, and other documents Arbitrator Cohen used in forming his decision with regards to the spousal surcharge. Doc 13. Whether an arbitration award should be vacated or enforced is a question of law. *Shelby Cty. Healthcare Corp. v. American Fed'n of State, Cty., & Mun. Emps., Local 1733*, 967 F.2d 1091, 1094 (6th Cir. 1992). As all material facts have been stipulated to and only an issue of law remains, summary judgment is appropriate in this case.

Heidelberg's motion for summary judgment, filed on February 1, 2019, asks the Court to vacate the Award, arguing it "conflicts with the express terms of the 2015 CBA and that Arbitrator Cohen exceeded the scope of his authority." (Doc 14, PageID 511-518). The Union's counterclaim for summary judgment, also filed on February 1, 2019, asks the Court to enforce the award, arguing that Arbitrator Cohen interpreted the terms of the contract, and that his interpretation was within the scope of his authority. (Doc 17, PageID 540-42). Since neither party raised a claim regarding fraud or dishonesty on the part of the arbitrator, only the first and third *Michigan Family* factors are at issue.

7

The third prong of the *Michigan Family* standard, which will be addressed first, demands a showing of interpretation which draws its essence from the contract. Heidelberg submits that both "dependents" and "premium" have clear, plain, and unambiguous meaning in the context of healthcare insurance and the contract. (Doc 14, PageID 521, 522). Logically, terms with clear and unambiguous meaning do not require interpretation. The Union counters this argument by indicating that the 2015 CBA itself does not explicitly define "dependent" or "premium", or cite specific laws or regulations to contextualize its use of those terms. (Doc 19, PageID 720). Therefore, their meaning cannot be clear, plain, and unambiguous, so the terms are susceptible to interpretation by Arbitrator Cohen. *Id.*

In *Michigan Family*, the Sixth Circuit made clear that ambiguity exists when an agreement is "utterly silent" on the issue at hand, and the arbitrator is consequently required "to engage in construction of the agreement." *Mich. Family* at 755. The arbitrator's construction of the agreement was permissible, held the Sixth Circuit, because the arbitrator's opinion "refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Id.* at 754. In the face of ambiguity, the arbitrator searched for "other indicators of meaning" and used those indicators to inform the interpretation. *Id.* at 755.

Arbitrator Cohen's award bears the hallmarks of contract interpretation. He compares the Union's argument in favor of applying the common meaning of dependents alongside Heidelberg's argument in favor of applying the IRS meaning of dependents. (Doc 13-13, PageID 505). He examines how Heidelberg's enrollment application, the 2011 and 2015 CBA Memorandum of Agreement for retirees' healthcare, and past practice under the 2011 and 2015

8

CBAs differentiate between spouses and dependents. (Doc 13-13, PageID 505-06). Taking all those factors into consideration, Arbitrator Cohen employs *expressio unis*, a legal canon of interpretation, to find that Heidelberg clearly did not intend to exclude spouses from coverage. *Id.* Likewise, Arbitrator Cohen directly refers to specific sections and language from the 2015 CBA, past practice, and a dictionary in reaching his interpretation of "premium cost sharing amount" to include the spousal surcharge. *Id.* References to legal canons of interpretation, language from the CBA, past practice, and dictionaries indicate interpretation of the meaning of "dependent" and "premium" drawn from the essence of the contract. The merits of those interpretations are not for the Court to consider.

The other prong of the *Michigan Family* test at issue in this case addresses whether the Award was within the scope of the arbitrator's authority. Neither party contests that the 2015 CBA submits unresolved grievances to final and binding arbitration, nor that the arbitrator is forbidden from adding terms to the agreement. Heidelberg claims that Arbitrator Cohen exceeded his agreed-upon authority and imposed his own brand of industrial justice by classifying spouses as "beneficiaries," an added class of healthcare eligible recipients not included in the 2015 CBA. (Doc 14, PageID 516-17). According to the Union, Arbitrator's Cohen acted within the scope of his authority because the term "beneficiaries" is used in the Award synonymously with "dependents" to indicate that spouses are properly the recipients of benefits under the 2015 CBA and therefore does not constitute an addition to the CBA. (Doc 17, PageID 549-50).

To support their position Heidelberg argues that "dependents has a clear and unambiguous meaning in the context of healthcare insurance" which excludes spouses, pointing

9

to the term's meaning in the Affordable Care Act and the Internal Revenue Code. (Doc 14, PageID 521). The company then cites *Lourdes Medical Center of Burlington County v. JNESO*, where a New Jersey district court vacated an arbitration award because the arbitrator wrote a new definition of "layoff" into a collective bargaining agreement which included an express definition of the term. *Lourdes Med. Ctr. v. JNESO*, Case No. 04-4494 (JCL), 2007 U.S. Dist. LEXIS 25458, *29-17 (D.N.J. Apr. 4, 2007).

However, *Lourdes* is distinct from the case at bar. The agreement in *Lourdes* included an express definition of "layoff", whereas the 2015 CBA between Heidelberg and the Union included no such definition of "dependents." Without an express, contractual definition of "dependents," the meaning of the term in context of the agreement is left open to interpretation by the arbitrator. In the Award, Arbitrator Cohen acknowledges Heidelberg's argument regarding the meaning of "dependents" but declines to adopt it, instead interpreting the agreement to cover spousal healthcare benefits. (Doc 13-13, PageID 505-506). A simpler term to describe any recipient of healthcare benefits is a "beneficiary." The beneficiaries of the 2015 CBA's healthcare provision are the Union members and their dependents. Arbitrator Cohen did not add a new term into the 2015 CBA by calling spouses "beneficiaries" but rather used it interchangeably with "dependents" to describe the status of spouses. Therefore, Arbitrator Cohen interpreted within the scope of his authority. Since he interpreted "dependents" rather than added "beneficiaries," and the interpretation was drawn from the essence of the contract, it cannot be said that Arbitrator Cohen was dispensing his own brand of industrial justice by utilizing the word "beneficiaries."

In addition to enforcement of the Award, the Union also claims that the Court may grant attorney's fees and costs under its general equity powers in a case brought under §301(a) of the Labor Management Relations Act, 29 U.S.C. §185, for a claim that is in bad faith, vexatious, wanton, or brought for oppressive reasons. (Doc 17, PageID 551). The Union argues that Heidelberg's complaint and refusal to comply with the Award is vexatious and in bad faith; additionally, there is "no objectively reasonable basis" for Heidelberg to argue that Arbitrator Cohen exceeded the scope of his authority. *Id.* at PageID 553. In response, Heidelberg highlights that the Labor Management Relations Act (LMRA) contains no fee shifting provision, leaving the Union with a common law theory and several out of circuit cases. (Doc 18, PageID 714).

The majority of the cases cited by the Union to support their position are distinct from the present situation. In *Local 285, Service Employees Int'l Union v. Nonotuck Resources Assocs., Inc.*, the First Circuit awarded fees and costs because the company's refusal to proceed to arbitration was unreasonable. *Local 285, Serv. Emps. Int'l Union v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 742 (1st Cir. 1995). Unlike Nonotuck, Heidelberg consented to arbitration and is questioning the propriety of the Award rather than unduly holding up the arbitration process itself. The Union also relies heavily on *Dreis & Krump Manufacturing. Co. v. International Association of Machinists* wherein the Seventh Circuit awarded fees and costs to the union under Rule 11 of the Federal Rules of Civil Procedure for an employer's action to vacate an arbitration award which was barred by the statute of limitations. *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists, Dist. No. 8*, 802 F.2d 247, 254-55 (7th Cir. 1986). Unlike in *Dreis & Krump*, the Union in the present case did not bring a claim for attorney's fees under Rule 11 nor was

11

Heidelberg's claim barred by the statute of limitations, therefore the Union cannot be awarded attorney's fees through that analogy.

There is no evidence of bad faith on the part of Heidelberg and there is a sufficiently reasonable basis for Heidelberg's argument regarding the scope of Arbitrator Cohen's authority; therefore, the Union's claim to attorney's fees must be denied. In *Monroe Auto Equipment Co. v. United Auto Workers*, the only Sixth Circuit attorney's fees case cited by the Union, the court found that Monroe's claim to vacate an arbitration award was brought in good faith and overturned the district court's award of attorney's fees on those grounds. *Monroe Auto Equipment Co. v. United Auto Workers*, 981 F.2d 261, 270 (6th Cir. 1992). Monroe's consistent acknowledgement of the court's limited scope of review, arguments that the award did not draw its essence from the agreement and failed to apply explicit terms of the agreement, and efforts to analogize their case to precedent illustrated that they did not act in bad faith. *Monroe Auto Equipment* at 270. Similar to Monroe, Heidelberg consistently acknowledged the Court's boundaries as set by *Michigan Family*, cited cases such as *Lourdes* as precedent, and made reasonable, good faith arguments that Arbitrator Cohen exceeded his authority by using the term "beneficiaries" and did not apply the plain definitions of "dependents" and "premium". The mere fact that Heidelberg brought a claim asking the Court to vacate the Award is not sufficient to show bad faith.

V.    **Conclusion**

Because Plaintiff Heidelberg failed to show that Arbitrator Cohen violated the *Michigan Family Resources* factors in issuing the arbitration Award, Plaintiff's Motion for Summary Judgment to Vacate Arbitration Decision and Award (Doc 14) is **DENIED**. Defendant's

Counterclaim Motion for Summary Judgment (Doc 17) is **GRANTED** with regards to the enforcement of the arbitration award but **DENIED** with regards to the award of attorney's fees. Defendant is **GRANTED** until August 2, 2019 to submit a draft judgment entry to the Court in conformity with this order and entry terminating the case.[1]

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial intern Mercedes C. Ramsey in drafting this opinion.